# William H. Myers, Appellee, v. Mary Ann O'Hare, Appellant.

## Gen. No. 14,482.

FORECLOSURE—*when decree properly awarded*. *Held*, under the evidence, that the sufficiency of the consideration for the notes secured having been established, and their non-payment, that a decree of foreclosure was properly awarded in favor of one who became the legal holder, free from any equities, for value, of such notes as collateral security.

Foreclosure. Appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Affirmed. Opinion filed March 26, 1909.

**Statement by the Court.** This appeal is prosecuted to reverse a decree of foreclosure. The bill was filed June 5, 1905, by appellee Myers against appellant, Mary Ann O'Hare, and her husband, Edward O'Hare, J. N. Martineau, John T. Booz, the trustee in the trust deed, and Frank M. Burwash, successor in trust therein. The bill was dismissed as to Edward O'Hare, who had died. Appellant filed an answer admitting the execution of the notes and trust deed, and the default of the other defendants was taken.

The indebtedness secured by the trust deed was evidenced by two notes for $125 each made by appellant and her husband, dated December 24, 1896. The notes and the trust deed were placed in the possession of J. N. Martineau on December 31, 1896, in payment, as he testified, of an indebtedness due to him from appellant. Myers, appellee, on that date loaned to Martineau $175 and Martineau indorsed and delivered the notes to Myers as collateral security for the repayment of the loan. Appellant, on the other hand, claims that she delivered the notes and trust deed to Martineau upon his agreement to pay off certain mechanics' liens on the property in question and for no other consideration, and that Martineau failed to pay

off and discharge the liens, and that the consideration for the notes failed.

The court by its decree found all the material allegations of the bill of complaint were proved, and that there was due the complainant the sum of $291.36; also the sum of $75 as a reasonable solicitor's fee, and ordered that if the defendants or some of them did not pay the complainant within twelve days from the date of the decree the said sum of $291.36 and the costs of suit, including solicitor's fee and master's fees taxed at $100.87, the premises be sold at public auction.

T. F. LARAMIE, for appellant.

M. J. DUNNE, for appellee.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

The contentions of appellant may be briefly summarized as follows: first, that there was no consideration for the execution of the notes and trust deed; and second, that if there was any consideration therefor, such consideration failed.

In behalf of the complainant, appellee, it was proved by the testimony of Martineau, Booz and Miss Noll that appellant in September, 1896, agreed with Martineau, who was in the real estate business, that the latter was to procure a loan of $1,100 for appellant on her lot described in the record, for the purpose of erecting a building thereon, and secure an architect to make plans for the building and let the contract for the erection of the building, attend to its construction, and also advertise and make an effort to sell a piece of property on Ashland avenue, Chicago, belonging to appellant. For this service appellant was to pay Martineau $250 when the building was completed. Martineau procured the loan, attended to the plans, let the contracts and supervised the construction of the building, making visits to the build-

ing three or four times a week during its construction. The building was estimated to cost about $1,350.

During the month of December, 1896, Martineau asked appellant for some money on account of what she owed him for these services. She said she could not give him any money as she had been unable to get any money from Canada as she expected. He said to her that if she could not give him any money, she might give him notes and second mortgage, and to this she acceded, and requested him to have the papers prepared and she would sign them. Martineau then had Mr. Booz, an attorney, prepare the trust deed and notes, set out in the bill of complaint, and appellant and her husband executed them on December 31, 1896, and delivered them to Martineau, who then applied to Mr. Booz to make him a loan on the notes.

Appellant was present in the office of Mr. Booz, where she had gone to acknowledge the trust deed. Mr. Booz asked appellant, in the presence of Martineau, if there was any reason why he should not make Martineau a loan and take the notes executed by her as collateral security, and appellant said it was all right to pay the money to Martineau. Thereupon Booz, for appellee Myers, loaned Martineau the sum of $175 and took the notes and trust deed as collateral security therefor.

Appellant stated in her testimony that when Martineau brought the notes to her house to have her execute them Mrs. Barry was present; that Martineau said there were liens on the property, and that the building could not be completed until she signed the notes and that they would then pay off the liens. Appellant testified that in Mr. Booz' office she said to Booz that she signed the notes for the purpose of paying the liens and debts on the building. She also testified that Martineau had done no work for her and that she owed him nothing.

Mrs. Barry testified that she heard Martineau say

to appellant that "the building could not be completed until she signed the notes to pay off the liens that was on the house."

From an examination of the evidence, the substance of which is given above, we are of the opinion that appellant was indebted to Martineau for services rendered to her at her request as testified to by him; and that she executed the notes to him, secured by a second mortgage on the premises described in the record, in payment for such services. We think the evidence shows by a clear preponderance that at the time appellant acknowledged the trust deed, she was informed by Booz that he was about to loan Martineau the sum of $175 and that she was then asked by Booz if there was any reason why he should not make the loan and take the notes as collateral security therefor, and that Booz stated to her at the same time that if there were any bills to be paid out of the money or if Martineau was to pay out any of the money he wished to know it and if so he would see that any such bills were paid; and that appellant replied it was all right to pay, the money to Martineau. Booz thereupon made the loan on behalf of appellee and took the notes as collateral security for the repayment of the loan for $175. The evidence shows, we think, that one purpose of having appellant go to the office of Booz was that Booz might satisfy himself, by seeing and talking to appellant personally, that there was no misunderstanding on the part of appellant as to the nature of the transaction, either between herself and Martineau or between Martineau and Myers, and that there were no equities between appellant and Martineau which could be urged against the securities to be taken as collateral to the proposed loan. We conclude further that there was a good consideration for the notes and that appellee became the legal holder for value of the notes as collateral security for the repayment of the loan without notice of and free from any equities between appellant and Martineau. The loan not having been

paid appellee, Myers, is entitled to foreclose the lien of the trust deed given to secure the notes.

Although the master's report found that there was due appellee, Myers, for principal and interest on the notes the sum of $414.05, and the decree in terms confirms the report, the chancellor by his decree properly found that the amount due appellee was $175 with interest thereon, amounting to $291.36, and decreed a sale for this amount, together with the solicitor's fee and master's fees and costs of suit.

The record is free from error and the decree is affirmed.

*Affirmed.*